ROBERT T. KNOX, Individually and on Behalf
of All Others Similarly Situated,

                              Plaintiff,

    -against-

AGRIA CORPORATION, GUANGLIN LAI,
KENNETH HUA HUANG, GARY KIM TING
YEUNG, ZHAOHUA QIAN, ZHIXIN XUE,
GEOFFREY DUYK, TERRY MCCARTHY,
JASMINE MARRERO, BROTHERS CAPITAL
LIMITED, CREDIT SUISSE SECURITIES
(USA) INC., PIPER JAFFRAY & CO. and CIBC
WORLD MARKETS CORP.,

                        Defendants.

08 Civ._____
[Related Cases: 08-cv-03536,
08-cv-03886, 08-cv-04456]

Removed from:
Supreme Court of the State of New York
County of New York
Index No. 602263/08

**NOTICE OF REMOVAL**



RECEIVED
AUG 29 2008
U.S.D.C. S.D. N.Y.
CASHIERS

        Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, defendant Agria Corporation ("Agria") hereby removes the above-captioned civil action, and all claims and causes of action therein, from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York. Agria appears for the purposes of removal only and for no other purpose, reserves all defenses and rights available to it, and states as follows:

        1.      On August 4, 2008, Plaintiff Robert T. Knox filed, but did not immediately serve, a Summons and Complaint in the Supreme Court of the State of New York, County of New York, captioned *Robert T. Knox v. Agria Corporation, et al.*, Index No. 602263/08 (the "State Court Action"). Agria Corporation was served with a copy of the Summons and Complaint on August 18, 2008.

        2.      Agria has not pled, answered, or otherwise appeared in the State Court Action. The Summons and Complaint constitute all of the process, pleadings, and orders

copy of the Summons and Complaint is attached hereto as Exhibit A.

3.      This Notice is being filed within 30 days of service of the Summons and
Complaint on Agria, and thus, is timely filed under 28 U.S.C. § 1446(b).

4.      This action is within the original jurisdiction of this Court under 28 U.S.C.
§ 1331 because it includes claims arising under the laws of the United States.  Specifically,
Plaintiff asserts claims against Agria arising under Section 11 of the Securities Act of 1933 (the
"Securities Act").  *See* Compl. ¶¶ 56-64.  Plaintiff also asserts claims against defendants
Guanglin Lai, Kenneth Hua Huang, Gary Kim Ting Yeung, Zhaohua Qian, Zhixin Xue, Geoffrey
Duyk, Terry McCarthy, Jasmine Marrero, Brothers Capital Limited, Credit Suisse Securities
(USA) Inc., Piper Jaffray & Co., CIBC World Markets Corp. and HSBC Securities (USA) Inc.
(collectively, "Defendants") arising under Section 11, 12(a)(2) and/or 15 of the Securities.  *See*
*id.* ¶¶ 56-74.

5.      Invoking the original jurisdiction of the Federal Courts, various plaintiffs
have filed three other purported class actions in the Southern District of New York (the "Related
Actions").  This action and the Related Actions, brought on behalf of the same purported
plaintiff class, have common defendants and legal claims for relief, and they arise out of a
common nucleus of operative facts.  In particular, each of the Related Actions asserts claims
against Agria and some or all of the Defendants under Sections 11, 12(a)(2) and/or 15 of the
Securities Act.  In fact, the allegations in the Related Actions filed in this Court are essentially
identical to the allegations in this case.  The Related Actions include the following:

- Plaintiff Charles Lintz filed a related case, 08-cv-03536, in the
  United States District Court for the Southern District of New York
  on April 11, 2008;

2

Plaintiff Joshua R. LeBlanc filed a related case, 08-cv-03886, in the United States District Court for the Southern District of New York on April 24, 2008; and

• Plaintiff Sandy Lodermier filed a related case, 08-cv-04456, in the United States District Court for the Southern District of New York on May 13, 2008.

The Related Actions are currently pending before the Honorable William H. Pauley, III, United States District Judge, Southern District of New York. Motions to consolidate and to appoint lead plaintiff and approval of selection of lead counsel were filed on June 10, 2008.

6.    Because this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331, it is removable under 28 U.S.C. § 1441 and the Securities Litigation Uniform Standards Act of 1998 (hereinafter, "SLUSA"), 15 U.S.C. § 77p(c). Under 28 U.S.C. § 1441(a), "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States embracing the place where such action is pending." Further, Section 1441(b) provides, in relevant part, that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

7.    SLUSA amended Section 22(a) of the Securities Act, creating an exemption to its non-removal provision, and expressly allowing the removal of certain "covered class actions" arising under the Securities Act. 15 U.S.C. § 77v(a). Section 16(c) of the Securities Act provides that "[a]ny covered class action brought in any State court involving a

covered security as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending . . . ." 15 U.S.C. § 77p(c) (emphasis added).

8. "Covered class action" includes:

"[A]ny single lawsuit in which . . . one or more named parties seeks to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members."

15 U.S.C. § 77p(f)(2)(A)(i)(II). A "covered security" is defined to include shares listed for trading on the New York Stock Exchange. 15 U.S.C. § 77p(f)(3); 15 U.S.C. § 77r(b)(1).

9. This action is a "covered class action . . . involving a covered security." Plaintiff is a named party seeking to recover damages on a representative basis on behalf of himself and others similarly situated, and the complaint alleges that common questions of law or fact predominate over individual questions. *See* Compl. ¶¶ 1, 50-55. Further, the securities at issue, the common shares of Agria Corporation, are "covered security[ies]" within the meaning of SLUSA because they are listed, and were listed during the relevant period, on the New York Stock Exchange. *See id.* ¶ 1.

10. Accordingly, Plaintiff's claims are removable to the United States District Court for the Southern District of New York under 15 U.S.C. §§ 77p(c), 77v and 28 U.S.C. § 1441. *See Rubin v. Pixelplus, Ltd.*, No. 06-CV-2964, 2007 U.S. Dist. LEXIS 17671 (E.D.N.Y. Mar. 13, 2007); *Rovner v. Vonage Holdings Corp.*, No. 07-178, 2007 WL 446658 (D.N.J. Feb. 7, 2007); *Brody v. Homestore, Inc.*, 240 F. Supp. 2d 1122, 1124 (C.D. Cal. 2003); *Alkow v. TXU Corp.*, No. 3:02-CV-2738-K, 2003 WL 21056750 (N.D. Tex. May 8, 2003); *see also California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86, 97 (2d Cir. 2004).

11. Agria will promptly serve a copy of this Notice on counsel for Plaintiff and will file a copy of this Notice with the Clerk of the Supreme Court of the State of New York, County of New York, pursuant to 28 U.S.C. § 1446(d).

4

Undersigned counsel has been informed that all of the Defendants who have been served with a copy of the Summons and Complaint in this action will file a joinder in Agria's Notice of Removal with the Court.

13. Undersigned counsel has been authorized to state that the remaining Defendants, who have not yet been served with the summons or complaint in this action, nevertheless concur in the removal of this action to this Court, subject to and without waiving all defenses and rights available to them.

WHEREFORE, Agria, pursuant to 28 U.S.C. § 1441, removes this action in its entirety from the Supreme Court of the State of New York, County of New York, to this Court.

Dated: New York, New York

August 29, 2008

Respectfully submitted,
LATHAM & WATKINS LLP

By _____
Joseph M. Salama
David M. Brodsky
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022
Telephone: (212) 906-1628
Email: joseph.salama@lw.com
Email: david.brodsky@lw.com

James J. Farrell (*Of Counsel*)
Latham & Watkins LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Telephone: (213) 891-8498
Email: james.farrell@lw.com

*Attorneys for Defendant*
Agria Corporation

5

EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| ROBERT T. KNOX, Individually and on Behalf of All Others Similarly Situated, | Index No. _____ |
| Plaintiff, | |
| -against- | **Summons** |
| AGRIA CORPORATION, GUANGLIN LAI, KENNETH HUA HUANG, GARY KIM TING YEUNG, ZHAOHUA QIAN, ZHIXIN XUE, GEOFFREY DUYK, TERRY MCCARTHY, JASMINE MARRERO, BROTHERS CAPITAL LIMITED, CREDIT SUISSE SECURITIES (USA) INC., PIPER JAFFRAY & CO. and CIBC WORLD MARKETS CORP., | Date Index No. Purchased: _____ |
| Defendants. | |



To the above named Defendant(s):

AGRIA CORPORATION, GUANGLIN LAI, KENNETH HUA HUANG, GARY KIM TING YEUNG, ZHAOHUA QIAN, ZHIXIN XUE, GEOFFREY DUYK, TERRY MCCARTHY, JASMINE MARRERO, BROTHERS CAPITAL LIMITED, CREDIT SUISSE SECURITIES (USA) INC., PIPER JAFFRAY & CO. and CIBC WORLD MARKETS CORP.

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is that violations occurred in New York County.

Dated: New York, New York
      August 4, 2008

                      SCOTT + SCOTT, LLP

                      by

                      Beth A. Kaswan
                      29 West 57th Street
                      New York, NY 10019
                      Telephone: (212) 223-6444
                      bkaswan@scott-scott.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ROBERT T. KNOX, Individually and on
Behalf of All Others Similarly Situated,

                     Plaintiff,

        -against-

AGRIA CORPORATION, GUANGLIN LAI,
KENNETH HUA HUANG, GARY KIM
TING YEUNG, ZHAOHUA QIAN, ZHIXIN
XUE, GEOFFREY DUYK, TERRY
MCCARTHY, JASMINE MARRERO,
BROTHERS CAPITAL LIMITED, CREDIT
SUISSE SECURITIES (USA) INC., PIPER
JAFFRAY & CO., CIBC WORLD MARKETS
CORP. and HSBC SECURITIES (USA) INC.

                  Defendants.

Index No.  08602263

*Summons*

Date Index No. Purchased: August 4, 2008

To the above named Defendant(s):

AGRIA CORPORATION, GUANGLIN LAI, KENNETH HUA HUANG, GARY KIM TING
YEUNG, ZHAOHUA QIAN, ZHIXIN XUE, GEOFFREY DUYK, TERRY MCCARTHY,
JASMINE MARRERO, BROTHERS CAPITAL LIMITED, CREDIT SUISSE SECURITIES
(USA) INC., PIPER JAFFRAY & CO., CIBC WORLD MARKETS CORP. and HSBC
SECURITIES (USA) INC.

     You are hereby summoned to answer the complaint in this action and to serve a copy of
your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's attorney within 20 days after the service of this summons,
exclusive of the day of service (or within 30 days after the service is complete if this summons is
not personally delivered to you within the State of New York); and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

     The basis of venue is that violations occurred in New York County.

Dated: New York, New York
       August 11, 2008

                      SCOTT + SCOTT, LLP

                      By

                      Beth A. Kaswan
                      29 West 57th Street
                      New York, NY  10019
                      Telephone:  (212) 223-6444
                      bkaswan@scott-scott.com

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| ROBERT T. KNOX, Individually and on Behalf of All Others Similarly Situated, | INDEX NO. _____ 08602263 |
| Plaintiff, | |
| v. | CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| AGRIA CORPORATION, GUANGLIN LAI, KENNETH HUA HUANG, GARY KIM TING YEUNG, ZHAOHUA QIAN, ZHIXIN XUE, GEOFFREY DUYK, TERRY MCCARTHY, JASMINE MARRERO, BROTHERS CAPITAL LIMITED, CREDIT SUISSE SECURITIES (USA) INC., PIPER JAFFRAY & CO. and CIBC WORLD MARKETS CORP, | |
| Defendants. | |



Plaintiff Robert T. Knox ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' press releases, Securities and Exchange Commission ("SEC") filings by Agria Corporation ("Agria" or the "Company") and media reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of Plaintiff and all other persons or entities, except for Defendants, who purchased or otherwise acquired the securities of Agria pursuant and/or traceable to the Company's initial public offering on or about November 6, 2007 (the "IPO" or the "Offering") seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"). The IPO was conducted for 17,150,000 American Depositary Shares (ADSs) for trading on the New York Stock Exchange (the "NYSE").

2.      Agria Corporation sells agricultural products, including corn seeds, sheep breeding products, and seedlings to customers throughout the People's Republic of China. Agria conducts substantially all of its operations in China through its contractual arrangements with its consolidated affiliate, Primalights III Agriculture Development Co. ("P3A").

3.      In violation of the Securities Act, Defendants were negligent by issuing false and misleading statements to the investing public relating to Agria's IPO and the Registration Statement and Prospectus (collectively referred to as the "Registration Statement") the Company filed with the SEC in support of its IPO.   Defendants negligently allowed the Registration Statement to paint a rosy picture of the Company and maintain that Agria had entered into secure employment agreements with its executives, had effective control over its affiliate, P3A, and had adequate internal and financial controls.

4.      On November 6, 2007, the Company conducted its IPO. Relying on its materially inaccurate public statements, the Company and its selling shareholder, Brothers Capital Limited, were able to raise over $282 million by selling 17,150,000 of the Company's securities to investors at a price of $16.50 per share.

5.    The Company continued to act negligently after its IPO.  On February 25, 2008, Agria further concealed the problems at the Company by announcing its expected guidance for the fourth quarter of 2007, and first quarter and full year of 2008, and that the Company's expected revenue in the first quarter of 2008 would be approximately 15% above the same quarter in 2007, or approximately RMB 136 million ($17.9 million US).

6.    However, on April 7, 2008, investors learned critical information that was negligently absent from the Registration Statement and subsequent Company announcements. First, Agria announced that its auditors were unable to begin their audit of the company's financial statements for 2007 due to various accounting and payment issues.  The Company warned that "given the substantial delay in the commencement of the audit process, there is a risk that the Company may not be able to file its Annual Report" on time.  The Company retracted its guidance for the fourth quarter of 2007, as well as for the first quarter and full year of 2008 that it had provided on February 25, 2008—only six weeks prior!  Second, the Company also announced that its Chief Operating Officer ("COO"), defendant Zhixin Xue, had abruptly resigned.  Further, the Company disclosed for the first time that its Chief Executive Officer ("CEO"), Defendant Guanglin Lai, was actively involved in protracted compensation negotiations with the COO and other key management of P3A, Agria's primary operating entity in China.  These P3A executives stood to receive, and on June 2, 2008 did receive, $18 million in cash and transfer of Company shares (which represented 22% of the Company) so as to "provide incentive for their continuing service and align their interests with those of the shareholders."  As the Company noted, payment of cash and/or shares to the COO and other executives "as compensation and incentive for their past and continuing services in connection with the

proposed transaction will likely result in material compensation charges to the Company in the period in which the payment is made."

7.     Upon the release of this news, shares of the Company's securities declined $3.34 per share, or almost 38 percent, to close on April 8, 2008 at $5.46 per share, on unusually heavy trading volume. The April 8, 2008 closing price represented a cumulative loss of $11.04, or 66.9 percent, of the value of the Company's shares at the time of its IPO just months prior. The Stock eventually dropped to a low of $3.52 on April 15, 2008.

8.     Under the applicable SEC rules and regulations governing the preparation of the Registration Statement, Defendants were negligent in failing to disclose or indicate, at the time of the IPO, the following material facts: (1) that the Company was already running the risk of potentially damaging its relationship defendant Xue and other executives at P3A; (2) that the Company was in active negotiations with defendant Xue and other key P3A executives to provide multi-million dollar compensation packages in order to secure their future services, which were vital to the Company's success; (3) that these dramatically increased compensation expenses would materially impact the Company's financial results going forward, specifically by increasing its general and administrative expenses, and decreasing its operating profit and margins; (4) that, as a result of the above, the Company's financial results following its IPO would in no way be analogous to the financial statements provided in its Registration Statement; (5) that various accounting and payment issues, which existed at the time of the IPO, would subsequently prohibit the Company's auditors from completing its audit of the Company's financial statements; (7) that the Company lacked adequate internal and financial controls; and (8) that, as a result of the foregoing, the Company's Registration Statement was false and misleading at all relevant times.

4

## JURISDICTION AND VENUE

9.    The claims alleged herein arise under §§11, 12(a)(2) and 15 of the 1933 Act. *See* 15 U.S.C. §§77k, 77l(a)(2) and 77o. Jurisdiction is conferred by §22 of the 1933 Act and venue is proper pursuant to §22 of the 1933 Act. Section 22 of the 1933 Act explicitly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court in the United States." Section 16(c) refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims under state or common law. This is an action asserting federal law claims. Thus, it does not fall within the definition of "covered class action" under §16(b)-(c) and therefore is not removable to federal court.

10.    The violations of law complained of herein occurred in New York County, including the preparation and dissemination of the materially false and misleading Registration Statement complained of herein, which statements were disseminated into this County. Agria and both of the Individual Defendants conduct business in this County.

## PARTIES

11.    Plaintiff Robert T. Knox purchased Agria common stock, as set forth in the certification attached hereto and incorporated herein by reference, pursuant and/or traceable to the IPO, and was damaged thereby.

12.    Defendant Agria's principal executive offices are located at Room 706, 7th Floor, Huantai Building, No 12A South Street, Shongguancun Haidian District, Beijing, China. The Company has appointed Law Debenture Corporate Services Inc., 400 Madison Avenue, 4th Floor, New York, New York 10017, as its "agent upon whom process may be served in any action brought against us under the securities laws of the United States."

13.    Defendant Guanglin Lai ("Lai") was, at all relevant times, the Company's Chairman of the Board of Directors. Lai was also Co-Chief Executive Officer of the Company until he recently resigned from that position on June 2, 2008. Defendant Lai is also the sole shareholder and a Director of Brothers Capital Limited. Defendant Lai signed the Company's Registration Statement.

14.    Defendant Kenneth Hua Huang ("Huang") was, at all relevant times, the Company's Co-Chief Executive Officer. As of June 2, 2008, defendant Huang is the Company's only Chief Executive Officer. Defendant Huang signed the Company's Registration Statement.

15.    Defendant Gary Kim Ting Yeung ("Yeung") was, at all relevant times, the Company's Chief Financial Officer ("CFO") and a member of the Board of Directors. Defendant Yeung signed the Company's Registration Statement.

16.    Defendant Zhaohua Qian ("Qian") was, at all relevant times, a member of the Company's Board of Directors. Defendant Qian is also a Director of Brothers Capital. Defendant Qian signed the Company's Registration Statement.

17.    Defendant Zhixin Xue ("Xue") was, at all relevant times, the Company's Chief Operating Officer ("COO") and a member of the Company's Board of Directors until his resignation effective April 1, 2008. Despite his resignation from Agria, defendant Xue maintained his position as Chairman of the Board and President of P3A. Defendant Xue signed the Company's Registration Statement.

18.    Defendant Geoffrey Duyk ("Duyk") was, at all relevant times, a member of the Company's Board of Directors. Defendant Duyk signed the Company's Registration Statement.

19.    Defendant Terry McCarthy ("McCarthy") is a member of the Company's Board of Directors and Chairman of its Audit Committee.

6

20.    Defendant Jasmine Marrero ("Marrero") was, at all relevant times, the Company's "Authorized U.S. Representative."    Defendant Marrero is the manager of Law Debenture Corporate Services Inc., which is located at 400 Madison Avenue, Suite 4D, New York, New York. Defendant Marrero signed the Company's Registration Statement.

21.    Defendants Lai, Huang, Yeung, Qian, Xue, Duyk, McCarthy and Marrero collectively referred to hereinafter as the "Individual Defendants."

22.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Agria's reports, press releases, documents, and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.    Each defendant was provided with copies of the Company's reports, press releases and documents alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.    Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the    positive representations which were being made were then materially false and misleading.    The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

23.    Defendant Brothers Capital Limited ("Brothers Capital") is incorporated in the British Virgin Islands, and is located at Palm Grove House, P.O. Box 438, Road Town, Tortola, British Virgin Islands. Defendant Brothers Capital was a selling shareholder in the Company's IPO, and sold approximately 10.3 million of the company's shares into its IPO for gross

7

proceeds of approximately $169.95 million. Defendant Brothers Capital is owned by Defendant Lai, and controlled by Defendants Lai and Qian.

24.    Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") was an underwriter of the Company's IPO, and served as a financial advisor and assisted in the preparation and dissemination of Agria's IPO materials.

25.    Defendant HSBC Securities (USA) Inc. ("HSBC") was an underwriter of the Company's IPO, and served as a financial advisor and assisted in the preparation and dissemination of Agria's IPO materials.

26.    Defendant Piper Jaffray & Co. ("Piper Jaffray") was an underwriter of the company's IPO, and served as a financial advisor and assisted in the preparation and dissemination of Agria's IPO materials.

27.    Defendant CIBC World Markets Corp. ("CIBC") was an underwriter of the Company's IPO, and served as a financial advisor and assisted in the preparation and dissemination of Agria's IPO materials.

28.    Defendants Credit Suisse, HSBC, Piper Jaffray and CIBC are collectively referred to hereinafter as the "Underwriter Defendants."

29.    The Individual Defendants, Brothers Capital and the Underwriter Defendants are collectively referred to as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

30.    Agria engages in the research and development, production, and sale of upstream agricultural products in the People's Republic of China. The company offers corn seeds, sheep

8

breeding products and seedling products to distributors. Agria conducts substantially all of its operations in China through its contractual arrangements with its consolidated affiliate P3A.

31.    According to the Company, "P3A is a consolidated affiliate of the Company which conducts Agria's corn seed, sheep breeding and seedling businesses and holds the requisite licenses and permits for these businesses in China. P3A has four record shareholders, consisting of Ms. Juan Li who is the wife of Mr. Guanglin (Alan) Lai, Agria's chairman and co-CEO, and Mr. Zhaohua (Paul) Qian, a director of Agria, who together hold 70% of the equity interests of P3A, as well as Mr. Xue, and Mr. Mingshe Zhang who has been involved in the management of P3A, who together hold 30% of the equity interests of P3A. Agria's relationship with P3A and its shareholders is governed by the contractual arrangements entered into between Agria's wholly-owned subsidiary in China and P3A and its shareholders."

**The Registration Statement**

32.    On or about November 5, 2007, Agria filed with the SEC a Form F-1/A Registration Statement for the IPO.

33.    On or about November 6, 2007, the Company conducted its IPO valued at more than $282 million. As the Company's press release stated:

> Agria Corporation ("Agria"), a fast-growing China-based agri-solutions provider engaged in research and development, production and sale of upstream agricultural products, today announced that it has priced its initial public offering of 17,150,000 American Depositary Shares (ADSs) at $16.50 per ADS. The ADSs, each representing two ordinary shares, will begin trading on Wednesday, November 7, 2007 on the New York Stock Exchange under the symbol "GRO."
>
> The offering comprises an initial public offering of 12,000,000 ADSs by Agria and an additional offering of 5,150,000 ADSs by a selling shareholder of Agria disclosed in the prospectus. The underwriters have an option, exercisable for 30 days from the date of the prospectus, to purchase up to an additional 2,572,500 ADSs

9

from Agria at the initial public offering price less the underwriting discounts and commissions to cover over-allotments of the ADSs.

Credit Suisse acted as sole book runner for this offering, and HSBC, Piper Jaffray and CIBC World Markets acted as co-managers for the offering.

34.    Also on or about November 6, 2007, the Company's Prospectus, which forms part of the Registration Statement, became effective. Both the Registration Statement and Prospectus (collectively the "Registration Statement) contained material false and misleading statements, omitted to state other facts necessary to make the statement made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.

35.    Regarding the Company's description of itself, the Registration Statement, in relevant part, stated:

> We are a fast-growing China-based agri-solutions provider engaged in research and development, production and sale of upstream agricultural products. We currently offer corn seeds, sheep breeding products and seedling products. Our goal is to become a leading provider of a variety of agricultural upstream products to meet evolving demands of other participants in the agricultural industry, including producers of corn, sheep and other agricultural products that are used to manufacture products such as animal feed, mutton and wool. We have experienced substantial growth in revenues and profitability in recent years. Our total revenues increased from RMB152.3 million in 2004 to RMB489.7 million ($64.3 million) in 2006, representing a compound annual growth rate, or CAGR, of 79.3%. Our net income increased from RMB57.8 million in 2004 to RMB253.9 million ($33.4 million) in 2006, representing a CAGR of 109.6%. In the six months ended June 30, 2007, we generated total revenues of RMB279.4 million ($36.7 million) and net income of RMB143.4 million ($18.8 million). In 2006, we achieved gross margins of 41.1%, 72.9% and 79.7% from our corn seed, sheep breeding and seedling segments, respectively, while revenues from our corn seeds, sheep breeding and seedling segments accounted for 50.2%, 39.4% and 10.4%, respectively, of our total revenues. In the six months ended June 30, 2007, revenues from our corn seeds, sheep breeding and seedling segments accounted for 47.9%, 39.6% and 12.5%, respectively, of our total revenues.

10

36.    In describing its Corporate Structure, the Registration Statement explains the crucial role P3A plays in Agria's corn seed, sheep breeding and seedling businesses. The Registration Statement, in relevant part, stated:

> PRC law currently prohibits a foreign entity or person from owning over 50% of any seed development and production business in China. We conduct our corn seed, sheep breeding and seedling businesses through contractual agreements with our consolidated affiliated entity, P3A, which holds the requisite licenses and permits for these businesses. Our contractual arrangements with P3A and its shareholders enable us to:
>
> - **exercise effective control over P3A**;
>
> - receive substantially all of the earnings and other economic benefits from P3A to the extent permissible under PRC law in consideration for the services provided by Agria China; and
>
> - have an exclusive option to purchase all or part of the equity interests in P3A in each case when and to the extent permitted by PRC law.

[Emphasis Added]

37.    Although the Company purports to control P3A through contractual arrangements, it is apparent from the statements above in ¶36 are materially inaccurate. According to its Registration Statement, Agria only offers corn seeds, sheep breeding products and seedling products, all of which are products P3A provides to the Company. Accordingly, P3A and its management team maintain substantial control over Agria and, as discussed below, were in a position to demand additional compensation from Agria.

38.    Under the "Risks Relating to Our Business" subhead, Defendants describe how critical each member of its management is to the Company's success. The Registration Statement, in relevant part, stated:

11

> *Our business depends substantially on the continuing efforts of our management, and our business may be severely disrupted if we lose their services.*
>
> **Our future success depends significantly upon the continued services of our management, especially in the case of our primary operating entity, P3A.** We rely on our management's experience in product development, business operations, and sales and marketing, and on their relationships with distributors and relevant government authorities. **If one or more of our key management personnel are unable or unwilling to continue in their present positions, we may not be able to replace them easily or at all.** The loss of the services of our key management personnel, in the absence of suitable replacements, could have a material adverse effect on our operations and financial condition, and we may incur additional expenses to recruit and train personnel. Each member of our management team has entered into an employment agreement with us, which contains confidentiality and non-competition provisions. If disputes arise between our management and us in light of the uncertainties within the PRC legal system, there is a risk that some of the provisions of these agreements may not be enforced or enforceable in China, where our managers reside and hold most of their assets.

[Emphasis Added]

39.     The statements referenced in ¶38 were materially inaccurate. The statements, which were made in conjunction with the IPO, failed to disclose that the Agria was in a contractual dispute with defendant Xue and other P3A executives over $18 million in compensation owed to P3A. Consequently, the Company faced the likely risk that defendant Xue would no longer be part of the management team. However, the Company did not disclose this material fact.

40.     Under the subhead "Our Strengths and Strategies," the Registration Statement emphasized its management experience and effective controls. In relevant part, the Registration Statement stated:

> We believe that the following strengths have contributed to our current market position:

12

- fast-growing China-based agri-solutions provider;

- a diversified portfolio of commercially successful products;

- strategic locations and extensive local knowledge and experience;

- strong marketing and customer support and extensive distribution network;

- **effective operations management and quality control system;**

- strong research and development capabilities; and

- **an experienced management team and skilled staff.**

[Emphasis Added]

41.    Under the subhead "Risks Related to the ADSs and this Offering," the Registration Statement acknowledged that the departure of executive officers and key personal would affect its ADSs' price. However, it failed to disclose that the Company was already running the risk of losing defendant Xue. In relevant part, the Registration Statement stated:

*The market price for our ADSs may be volatile.*

The market price for our ADSs may be highly volatile and subject to wide fluctuations in response to factors including the following:

- announcements of technological or competitive developments;

- regulatory developments in our target markets affecting us, our customers or our competitors;

- actual or anticipated fluctuations in our quarterly operating results;

- changes in financial estimates by securities research analysts;

- changes in the economic performance or market valuations of other corn seed, sheep products or seedling companies;

- additions or **departures of our executive officers and key personnel;**

- fluctuations in the exchange rates between the U.S. dollar and RMB;

13

- release or expiration of lock-up or other transfer restrictions on our outstanding ADSs; and

- sales or perceived sales of additional ADSs.

[Emphasis Added]

42.    Under the "Operating Expenses" subhead, the Registration Statement disclosed its general administrative expenses. However, the Registration Statement failed to disclose that the company was in active negotiations with defendant Xue and other key P3A executives to provide multi-million dollar compensation packages that would materially impact the Company's financial results, specifically by increasing its general and administrative expenses. In relevant part, the Registration Statement stated:

> *General and Administrative Expenses.*    Our general and administrative expenses primarily consist of compensation and benefits for administrative, finance and human resources personnel, depreciation, provisions for bad debts, travel and other expenses associated with our corporate and administrative activities. We expect that our general and administrative expenses will increase as we add additional personnel and incur additional costs related to the growth of our business. We also expect to incur additional general and administrative expenses as a result of becoming a listed public company upon completion of this offering.
>
> ***
>
> [Six Months Ended June 30, 2007 Compared to Six Months Ended June 30, 2006]
>
> *General and Administrative Expenses.*    Our general and administrative expenses increased by 3.4% from RMB3.4 million in the six months ended June 30, 2006 to RMB3.6 million ($0.5 million) in the six months ended June 30, 2007. The increase resulted primarily from an increase of RMB2.0 million in professional service fees, salaries, traveling expenses and rental expenses related to the establishment of Agria Corporation and Agria China, partly offset by (1) a reversal of RMB1.2 million bad

14

debt provision recorded in a previous period, as we subsequently collected the outstanding debts in full in the six months ended June 30, 2007 and (2) a decrease of RMB0.3 million in corporate expenses.

\*\*\*

[Year Ended December 31, 2006 Compared to Year Ended December 31, 2005]

*General and Administrative Expenses.* Our general and administrative expenses increased by 78.6% from RMB4.2 million in 2005 to RMB7.5 million ($1.0 million) in 2006. The increase resulted primarily from (1) an increase of RMB1.4 million in corporate expense which was in line with the expansion of business; (2) an increase of RMB0.8 million in salaries and benefits for our administrative, finance and human resources personnel; and (3) an increase of RMB0.6 million in travel expenses.

\*\*\*

[Year Ended December 31, 2005, Compared to Year Ended December 31, 2004]

*General and Administrative Expenses.* Our general and administrative expenses decreased by 30.2% from RMB6.0 million in 2004 to RMB4.2 million in 2005 primarily due to the one-time payment of RMB2.9 million to the former shareholders of P3A in 2004 in connection with our acquisition of P3A. The impact was partly offset by the increase of RMB1.2 million in bad debt provision.

43.    Defendants also were negligent in the statements made regarding employment agreements purportedly in effect with the Company's senior executive officers. The Registration Statement, in relevant part, stated:

**We have entered into employment agreements with each of our senior executive officers.** We may terminate a senior executive officer's employment for cause, at any time, without notice or remuneration, for certain acts of the officer, including, but not limited to, a conviction or plea of guilty to a felony, negligent or dishonest acts to our detriment or misconduct or a failure to

15

perform agreed duties. A senior executive officer may, upon one-month advance written notice, terminate his or her employment if there is a material reduction in his or her authority, duties and responsibilities, if there is a material reduction in his or her salary or if such resignation is approved by our board of directors. Furthermore, we may, upon advance written notice, terminate a senior executive officer's employment at any time without cause. Each senior executive officer is entitled to certain benefits upon termination without cause as is expressly required by the jurisdiction in which the executive is based.

[Emphasis Added]

44.    The foregoing statements made in the Company's Registration Statement were materially false and misleading when made because the Company failed to the disclose the following material facts concerning Agria's management, operations and internal controls:  (1) that the Company was already running the risk of potentially damaging its relationship defendant Xue and other executives at P3A; (2) that the Company was in active negotiations with defendant Xue and other key P3A executives to provide multi-million dollar compensation packages in order to secure their future services, which were vital to the Company's success; (3) that these dramatically increased compensation expenses would materially impact the Company's financial results going forward, specifically by increasing its general and administrative expenses, and decreasing its operating profit and margins; (4) that, as a result of the above, the Company's financial results following its IPO would in no way be analogous to the financial statements provided in its Registration Statement; (5) that various accounting and payment issues, which existed at the time of the IPO, would subsequently prohibit the Company's auditors from completing its audit of the Company's financial statements; and (7) that the Company lacked adequate internal and financial controls and procedures.

16

## The Truth Begins to Emerge

45.    On April 7, 2008, after the close of the market, Agria shocked investors when it

issued a press release entitled "Zhixin (Frank) Xue Resigned as COO of Agria; Xue Will Remain

Chairman of Primalights III Agriculture Development, Co., Ltd." Therein, the Company, in

relevant part, stated: With regard to the Defendant Xue, the Company's COO, the Registration

Statement, in relevant part, stated:

> Agria Corporation (NYSE: GRO) (the "Company" or "Agria"), an
> innovative China-based agri-solutions provider, today **announced
> the resignation of Zhixin (Frank) Xue from his positions at the
> Company, effective April 1, 2008.** Prior to his resignation, Mr.
> Xue had served as the Company's chief operating officer ("COO")
> since June 2007 and as a director since August 2007. Mr. Xue will
> remain as the chairman and authorized legal representative of
> Primalights III Agriculture Development, Co., Ltd. ("P3A"),
> Agria's primary operating entity in China. Mr. Xue has indicated
> his intention to continue working with Agria in further developing
> P3A's business.
>
> On March 26, 2008, Mr. Xue informed the Company's Board of
> Directors (the "Board") that he intended to resign from his
> positions at the Company. Under the Company's corporate
> governance guidelines, the Board may accept or reject the
> resignation request of any director and/or officer. The Board
> rejected Mr. Xue's resignation request on March 31, 2008 and
> gave Mr. Xue 24 hours to make a final decision. Mr. Xue did not
> respond to the Board within 24 hours. Consequently, effective
> April 1, 2008, Mr. Xue ceased to be the COO and a director of the
> Company.
>
> **Mr. Xue is also the chairman and authorized legal
> representative of P3A and has been primarily responsible for
> the management of P3A's operations since its inception in
> 2000.** Mr. Xue's positions at P3A remain unchanged.
>
> The Board will begin the process of considering candidates to fill
> the COO position. There is **no assurance that the Company will
> be able to find a qualified COO easily or at all or that upon
> recruiting a new COO, such person will be able to work with
> members of P3A management effectively and successfully. In**

17

addition, if Mr. Xue and/or other management personnel of P3A decide to resign from P3A in the future as a result of the conditions set forth by the Special Committee (as described below) or otherwise, the loss of their services in the absence of suitable replacements would have a material adverse effect on the Company's business, financial condition and results of operations. In such an event, the Company would also incur additional expenses to recruit and train new personnel.

Separately, the Company's independent auditors have been unable to begin their audit of the Company's financial statements for 2007. Given the substantial delay in the commencement of the audit process, there is a risk that the Company may not be able to file its Annual Report on Form 20-F for the fiscal year ended December 31, 2007 by June 30, 2008. The Company is retracting its prior guidance for the fourth quarter of 2007 and first quarter and full year of 2008 as provided in a press release on February 25, 2008.

## I. P3A

P3A is a consolidated affiliate of the Company which conducts Agria's corn seed, sheep breeding and seedling businesses and holds the requisite licenses and permits for these businesses in China. P3A has four record shareholders, consisting of Ms. Juan Li who is the wife of Mr. Guanglin (Alan) Lai, Agria's chairman and co-CEO, and Mr. Zhaohua (Paul) Qian, a director of Agria, who together hold 70% of the equity interests of P3A, as well as Mr. Xue, and Mr. Mingshe Zhang who has been involved in the management of P3A, who together hold 30% of the equity interests of P3A. Agria's relationship with P3A and its shareholders is governed by the contractual arrangements entered into between Agria's wholly-owned subsidiary in China and P3A and its shareholders. **These contractual arrangements enable Agria to effectively control P3A and receive substantially all of P3A's earnings and other economic benefits to the extent permissible under PRC law.** The Company believes that the contractual arrangements entered into between Agria's wholly-owned subsidiary in China and P3A and its equity shareholders are substantially similar to the contractual arrangements entered into by other China-based companies listed on U.S. stock exchanges engaged in businesses subject to restrictions on or prohibitions of foreign ownership in China. The Company relies on all of P3A's shareholders to abide by the contract laws of China and honor their contracts with the Company. There is a risk that one or more of the shareholders of P3A may breach the existing contractual

18

arrangements with the Company and not act in the best interests of the Company. If the Company cannot resolve any conflicts of interest between itself and any shareholder of P3A or if any shareholder breaches the existing contracts with the Company, the Company would have to resort to legal proceedings against such shareholder, which may result in disruption to the Company's business. There is also substantial uncertainty as to the outcome of any such legal proceedings.

## II. Background of Resignation

In late January 2008, **the Board learned that Mr. Lai and Mr. Xue had been discussing payment of $18 million in cash and transfer of shares (which represent 22% of the Company) owned by Brothers Capital Limited ("BCL") to Mr. Xue and certain members of P3A management designated by Mr. Xue,** including Mingshe Zhang, Lv Yan and Zhonglin Han, to be commensurate with their contribution to the Company and to provide equity incentive for their continuing service. BCL is solely owned by Mr. Guanglin (Alan) Lai, who is the husband of Ms. Juan Li. The payment of cash and transfer of shares by BCL to Mr. Xue and members of P3A management team is referred to in this disclosure as the "proposed transaction." Mr. Lai informed the Board that he would cause BCL to make the cash payment and transfer the shares, provided that Mr. Xue and members of P3A management would satisfy the conditions established by the Board for purposes of ensuring P3A management's continuing service and reinforcing the Company's control over P3A. **Mr. Lai informed the Board that he believed the proposed payment by BCL to Mr. Xue and members of P3A management team would provide incentive for their continuing service and align their interests with those of the shareholders of the Company. The Board was concerned about the potential adverse impact of the proposed transaction on the Company's business, financial condition and results of operations, as well as whether a similar situation may occur in the future. On February 4, 2008, the Board approved a payment of $9 million by BCL to Mr. Xue and agreed to consider the proposed transaction at a board meeting to be held in the near future. The Board also agreed to consider the payment of the remaining $9 million by BCL to Mr. Xue within 30 days after February 4, 2008 if certain conditions were met.**

At a subsequent meeting in February 2008, the Board formed a Special Committee comprised of non-executive directors to evaluate the proposed transaction and set forth conditions to be met

19

by Mr. Xue and members of P3A management team before the cash and shares from BCL would be released. At the same meeting, BCL agreed to deposit the remaining cash and shares into an escrow account administered by a third-party banking institution.

While the Special Committee was in the process of evaluating the proposed transaction, **on March 5, 2008, Mr. Xue informed the Board that he intended to resign from his positions as the Company's COO and director because he did not receive any response from the Special Committee and did not believe the Board or the Special Committee had the ability to resolve all important matters of the Company.** The English translation of Mr. Xue's e-mail to the Board is attached hereto as Exhibit A and is incorporated by reference herein. In accordance with the Company's corporate governance guidelines, the Board may accept or reject Mr. Xue's resignation request. Accordingly, on March 7, 2008, the Board rejected Mr. Xue's resignation request. Mr. Xue agreed with the Board's decision and withdrew his resignation request on March 8, 2008. Meanwhile, Mr. Xue requested that the proposed transaction between BCL and Mr. Xue and members of P3A management be consummated in the near future.

## III. Resignation

In March 2008, the Special Committee was actively discussing and finalizing the terms of the escrow agreement with BCL and considering and discussing the conditions to be met by Mr. Xue and members of P3A management team. On March 25, 2008, Mr. Xue asked the Board and the Special Committee about the status of the escrow account. On March 26, 2008, Mr. Xue missed the e-mail update regarding the status of the escrow account from the Special Committee and sent his resignation request via e-mail to the Board. In his e-mail to the Board, Mr. Xue indicated that he was disappointed with the fact that he had not received any written explanation from the Special Committee regarding the proposed transaction, and that he had not seen any concrete measures to ensure the consummation of the proposed transaction. At the request of the Special Committee, BCL placed the additional $9 million in cash and a signed blank share transfer form to transfer a total of 27,808,000 ordinary shares representing 22% of the total issued and outstanding shares of the Company, into the escrow account on March 27, 2008. Under the escrow agreement entered into between BCL and the escrow agent, an independent third party, the escrow account will automatically terminate on the

20

earlier of June 16, 2008, or at any time prior to June 16, 2008, upon written instructions from at least a majority of the Special Committee members, and only the Special Committee members may authorize the escrow agent to release the escrowed cash and share transfer form before the escrow account terminates. A copy of the escrow agreement will be filed as an exhibit to Form 6-K containing this announcement and be incorporated by reference therein. The escrow agreement is expected to be amended to extend the final termination date to June 20, 2008. On March 31, 2008, the Board informed Mr. Xue of its decision to reject Mr. Xue's resignation request in accordance with the Company's corporate governance guidelines and gave Mr. Xue 24 hours to make a final decision. Mr. Xue did not respond to the Board within 24 hours and therefore, Mr. Xue ceased to be the COO and a director of the Company on April 1, 2008. The English translation of Mr. Xue's e-mail to the Board is attached hereto as Exhibit B and is incorporated by reference herein. Mr. Xue was provided a copy of this press release.

**IV. Other Events**

The Special Committee will continue to discuss conditions to be met by Mr. Xue and other members of the P3A management team before the proposed transaction can be consummated. Payment of cash and/or shares by BCL to Mr. Xue and members of P3A management as compensation and incentive for their past and continuing services in connection with the proposed transaction will likely result in material compensation charges to the Company in the period in which the payment is made. However, these compensation charges are expected to be non-cash charges and non-dilutive to shareholders since the payment would be made by BCL, a major shareholder of the Company.

[Emphasis added.]

46.    Also on April 7, 2008, the Company filed a 6-K with the SEC so as to file the above press release. Attached as exhibits to the Company's 6-K were two emails from defendant Xue. Among several revelations, defendant Xue's emails indicated that he had repeatedly expressed his reservations about the Company's Board of Director's independence and corporate governance and oversight capabilities. However, the Company ignored the multiple warnings

and did not include any of the Board's deficiencies in the Registration Statement. Defendant Xue's emails, in relevant part, stated:

**Exhibit A**

English Translation

Resignation Letter

Up to today (March 5, 2008), the Shanxi team have overcome many difficulties and fully fulfilled its responsibilities in accordance with the requirements of the Board of Directors. In the meantime, the Board of Agria has neither substantively or effectively enforced its decision made at the February 4, 2008 meeting involving the substantial interest of the Company nor fulfilled its promise with the binding timeline. The result of the above facts fully indicates that it has lost the trust of the Shanxi team, and also inevitably makes people question the seriousness of its decision and its ability to resolve all important internal and external matters of the Company.

**Based on the facts including but not limited to the above, I also personally do not think that the current composition of the Board is reasonable, could effectively strengthen the Company's corporate governance or has the ability to make independent judgment, which makes it unable to fully protect the ultimate interests of the Company and all shareholders. As a result, I have requested many times orally or in writing to restructure the Board of Agria.**

After thorough and careful consideration, I have no reason to persuade myself to continue to serve as the director and senior management of the Company. In light of this, I hereby resign my position as the director and the COO of Agria, effective today, for which I only express my deep regret.

I hereby once again thank you everyone for your past cooperation and support at work.

Best regards,

Zhixin Xue

March 5, 2008

***

**Exhibit B**

English Translation

Chairman, Directors and CEO,

The March 25 deadline for Agria's Board of Directors and the Special Committee to solve the problem regarding the share and cash transfer to P3A team has passed. I didn't receive any formal written explanation from the Board or the Special Committee before such deadline as to why the promise wasn't fulfilled, nor did I receive any legally binding protection measures relating to the share and cash transfer under these circumstances. I am deeply disappointed with this. In the meantime, **I have no doubt that Agria's Board needs to be restructured in order to strengthen the Company's corporate governance. I submitted my resignation request to the Board on March 5, 2008, but subsequently temporarily withdrew the resignation out of my respect for the Board and good wishes toward Agria. Now that the established facts have convinced me that my previous resignation was a right decision.** After careful consideration, I hereby announce that I resign my position as the director and the COO of Agria, effective immediately.

Best regards,

Zhixin Xue

March 26, 2008

[Emphasis Added]

47.    Upon the release of the Company's news, shares of the company's securities declined $3.34 per share, or almost 38% to close on April 8, 2008 at $5.46 per share, on unusually heavy trading volume.  This closing price on April 8, 2008 represented a cumulative loss of $11.04, or 66.9%, of the value of the Company's shares at the time of its IPO just months prior.

23

48.    Later on April 16, 2008, Agria confirmed that its independent auditors have commenced their audit of the Company's financial statements for 2007.

49.    On June 2, 2008, the Company issued a press release entitled, "Agria Announces Agreements by P3A's Key Management and a Major Shareholder." The announcement evidences Defendants negligence in preparing and publishing the Registration Statement. In relevant part, the June 2, 2008 press release stated:

> Agria Corporation (NYSE:GRO - News) (the "Company" or "Agria"), an innovative China-based agri-solutions provider, today announced that key management of Primalights III Agricultural Development Co., Ltd. ("P3A"), a consolidated affiliated entity of Agria, as well as Brothers Capital Limited ("BCL"), a major shareholder of Agria, and its directors, have each entered into agreements with the Company in connection with the proposed release to P3A's key management of the cash and shares placed into escrow by BCL. Agria's Board of Directors believes these agreements are in the best interest of Agria and its shareholders and the Board has approved the terms of these agreements.
>
> To enhance P3A's corporate governance, Zhixin (Frank) Xue, P3A's president, Guanglin (Alan) Lai, Agria's chairman and BCL's sole shareholder, and Zhaohua (Paul) Qian, a director of Agria and BCL, have agreed that P3A's articles of association will be amended to create a board of directors for P3A and to provide that P3A's legal representative, who is currently Mr. Xue, shall have no authority to act on behalf of P3A except as approved by P3A's board of directors. In addition, the Company will appoint a new chairman for P3A, and Mr. Xue has agreed to use his best efforts to effect such appointment. Mr. Xue has entered into a new employment agreement with P3A to serve as its president or any other position appointed by P3A's board of directors for an initial term of three years.
>
> With respect to P3A's shareholding structure, each of Messrs. Xue, Lai and Qian has agreed to cause a transfer of certain equity interests in P3A directly held by him or his spouse to Hua (Kenneth) Huang, Agria's current chief executive officer.
>
> To provide additional equity incentives and retain the services of employees of P3A and Agria, Messrs. Xue, Lai and Qian have

24

agreed to contribute options to purchase a total of 2,200,000 ordinary shares, which constitute all of the options granted to them by the Company, to a new management retention plan to be established for the benefit of these employees.

**With respect to the $18 million in cash that BCL agreed to pay to P3A team members, including $9 million paid in February 2008 and the additional $9 million that was placed into a third-party escrow account pending distribution, Mr. Xue, Mr. Mingshe Zhang and Mr. Lv Yan, who are members of P3A's key management team, have agreed that all of the cash proceeds received from BCL will be distributed solely to members of P3A's management.** With respect to the shares that BCL has agreed to transfer to Mr. Xue, he has agreed not to sell, transfer, pledge or otherwise dispose of that number of shares representing 50% of the shares to be transferred to him for two years and not to sell, transfer or otherwise dispose of the remaining shares to be transferred to him for one year. This lock-up restriction is subject to limited exceptions, including transfers in connection with material M&A transactions approved by Agria's board, if any, and pledges of the shares subject to the one-year lock-up restriction for his own financing purposes, if any. Mr. Zhang and Mr. Yan have also agreed not to sell, transfer or otherwise dispose of the shares to be transferred to them for six months.

To evidence its confidence in the future prospects of the Company, BCL has agreed to subject 18,432,000, or 14.58% of Agria's total outstanding shares held by BCL to a two-year lock-up restriction and to subject the remainder of its Agria shares to a six-month lock-up restriction. This lock-up restriction is subject to limited exceptions, including share transfers in connection with material M&A transactions approved by Agria's board, if any, and pledges of the shares subject to the six-month lock-up restriction for BCL's financing purposes, if any.

After completion of the share transfer from BCL to P3A's key management, BCL and P3A's key management will hold approximately 38.4% and 22.0%, respectively, of the Company's total outstanding shares as of the date of this press release, excluding shares issuable upon exercise of outstanding stock options granted under the Company's 2007 equity incentive plan.

As part of Agria's increased focus on potential M&A opportunities, Mr. Lai, Agria's chairman and BCL's sole

25

shareholder, has resigned as a co-chief executive officer of Agria and will focus on pursuing strategic M&A transactions for Agria.

Agria believes these agreements will enhance corporate governance and the structure of P3A and the Company. Agria will continue to consider and review other corporate governance enhancements on an ongoing basis.

As previously announced, Agria's Board of Directors formed a Special Committee of non-executive directors to negotiate and evaluate the terms for these proposed transactions and for releasing the cash and shares placed into escrow by BCL to P3A's key management. The Special Committee, with the assistance of its independent legal advisors, have unanimously recommended the terms of the agreements announced today, together with certain other proposals, and the disinterested members of Agria's Board have unanimously approved these arrangements. Pursuant to the agreements reached by the parties, both BCL and P3A's key management have agreed to pay certain legal and other expenses incurred by the Special Committee in connection with this matter.

**Payment of cash and/or shares by BCL to members of P3A's management as compensation, subject to meeting certain conditions, to reward their contribution will result in material compensation charges to the Company.** The initial $9 million in cash paid by BCL to P3A's key management in February 2008 will be accounted as compensation charge on the Company's financial statements for the first quarter of 2008. The additional $9 million in cash paid by BCL and the market value of the total number of shares transferred by BCL to P3A's key management, adjusted for the return of Mr. Xue's, Mr. Qian's and Mr. Lai's options, will be accounted as compensation charges during the period in which the conditions are expected to be met, which is anticipated to be in the second quarter of 2008. However, these compensation charges are expected to be non-cash charges and non-dilutive to shareholders since the payment would be made by BCL, a major shareholder of the Company, rather than Agria. **Agria's independent auditors are continuing their audit of the Company's financial statements for 2007 and performing certain agreed upon procedures with respect to the Company's financial information for the first quarter of 2008.**

Copies of the agreements between Agria and P3A's key management and BCL, respectively, an acknowledgement and waiver agreement between Mr. Xue, BCL and its directors, and the new employment agreement between Mr. Xue and P3A, will be

filed with the SEC as exhibits to Form 6-K containing this press release.

[Emphasis Added]

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

50.    Plaintiff brings this action as a class action pursuant to Civil Practice Law and Rules ("CPLR") §§ 901(a) and 902 on behalf of a Class, consisting of all those who purchased Agria's common units pursuant or traceable to the Company's IPO for ADSs traded on the NYSE and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

51.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. The proposed Class may be identified from records maintained by Agria or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

52.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.

53.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

27

54.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.     whether the Company issued false and misleading statements in connection with its IPO; and

c.     to what extent the Plaintiff and members of the Class have sustained damages and the proper measure of damages.

55.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM
### Violation of Section 11 of
### The Securities Act Against All Defendants

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against each of the Defendants.

28

58.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading and omitted to state material facts required to be stated therein.

59.    Defendant Agria is the issuer of the securities purchased by Plaintiff and the Class. As such, Agria is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

60.    The Individual Defendants each signed the Registration Statement either personally or through an Attorney-in-Fact and/or caused their issuance. The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They had a duty to ensure that it was true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading and that the document contained all facts required to be stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material fact necessary to make the statements made therein not misleading. As such, the Individual Defendants are liable to Plaintiff and the Class.

61.    By reasons of the conduct herein alleged, each Defendant violated §11 of the Securities Act.

62.    Plaintiff acquired Agria common units in reliance on the Registration Statement and without knowledge of the untruths and/or omissions alleged herein. Plaintiff sustained damages and the price of Agria shares declined substantially due to material misstatements in the Registration Statement.

63.     This action was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the IPO.

64.     By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the defendants and each of them, jointly and severally.

## SECOND CLAIM
### Violation of Section 12(a)(2) of
### The Securities Act Against the Individual Defendants

65.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.     Defendants were sellers and offerors and/or solicitors of purchasers of the Agria securities offered pursuant to the November 6, 2007 IPO.  Defendants issued, caused to be issued, and signed the Registration Statement in connection with the IPO. The Registration Statement was used to induce investors, such as Plaintiff and the other members of the Class, to purchase Agria securities.

67.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein. The Individual Defendants' actions of solicitation included participating in the preparation of the false and misleading Registration Statement.

68.     As set forth more specifically above, the Registration Statement contained untrue statements of material fact and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

69.     Plaintiff and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement.

30

70.    The Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading. None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects. Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

71.    This claim was brought within one year after discovery of the untrue statements and omissions in the Registration Statement and within three years after Agria securities were sold to the Class in connection with the IPO.

### THIRD CLAIM
### For Violation of Section 15 of the Securities Act
### Against the Individual Defendants

72.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

73.    The Individual Defendants acted as controlling persons of Agria within the meaning of §15 of the Securities Act. By reason of their ownership, senior management positions and/or directorships at the Company, as alleged above, these Defendants, individually and acting pursuant to a common plan, had the power to influence and exercised the same to cause Agria to engage in the conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act.

74.    By reason of such wrongful conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act. As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of the Company's securities.

31

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to CPLR §§ 901(a) and 902;

B.    Awarding Plaintiff and other members of the Class compensatory damages;

C.    Awarding Plaintiff and other members of the Class rescission on their Section 12(a)(2) claim;

D.    Awarding Plaintiff and other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.    Awarding Plaintiff and other members of the Class any other relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 4, 2008

Respectfully submitted,
SCOTT + SCOTT, LLP

BETH KASWAN (Reg. #1932714)
29 West 57th Street, 14th Floor
New York, NY 10019
Tel: (212) 223-6444
Fax: (212) 223-6334
bkaswan@scott-scott.com


David R. Scott
PO Box 192
108 Norwich Avenue
Colchester, CT 06415
Tel: (860) 537-5537
Fax: (860) 537-4432
drscott@scott-scott.com

Arthur L. Shingler III
Luis E. Lorenzana
600 B Street, Suite 1500
San Diego, California 92101
Tel.: (619) 233-4565
Fax: (619) 233-0508
ashingler@scott-scott.com
llorenzana@scott-scott.com

*Attorneys for Plaintiff*